FILED

2017 Jan-12  AM 11:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.:  4:15-CV-1787-VEH** |
| | ) |
| **FELIX URIOSTE, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

---

## MEMORANDUM OPINION AND ORDER

## I.    Procedural Background

Plaintiff United States filed this federal tax lien enforcement action against

numerous Defendants[1] on October 13, 2015, pursuant to 26 U.S.C. § 7403.[2] (Doc. 1).

---

[1] Plaintiff sued seven Defendants originally:  (i) Felix Urioste, individually and as a personal representative of the estate of Michael A. Urioste; (ii) Michael A. Urioste, Jr., individually and as a personal representative of the estate of Michael A. Urioste; (iii) Mary D. Urioste; (iv) Alabama Scrap and Salvage, LLC; (v) Teja Jouhal; (vi) Metro Bank; and (vii) the City of Gadsden. The City of Gadsden is no longer a party, having been dismissed on January 5, 2016, after it disclaimed any interest in the action. (Doc. 18). Defendants Metro Bank and Teja Jouhal have separately entered into agreements with Plaintiff about their respective priority of interests. (Docs. 29, 31, 32, 37).

[2]  28 U.S.C. § 7403 provides in part that:

In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability.

The suit pertains to the outstanding tax liability of the deceased taxpayer–Michael A. Urioste (the "Taxpayer")–and his single-member limited liability company–Salrecon LLC ("Salrecon").

Pending before the court are Plaintiff's Motion for Summary Judgment (Doc. 35) (the "Motion") and attached evidentiary materials, all of which were filed on July 13, 2016. The Motion seeks summary judgment against the Urioste Defendants–Felix Urioste, Michael A. Urioste, Jr., Mary D. Urioste, and Alabama Scrap and Salvage, LLC ("Alabama Scrap"). (*Id.* at 1-2). More specifically, Plaintiff seeks an order authorizing it to foreclose upon certain property owned by the Taxpayer to satisfy "unpaid federal income tax liabilities for 2002 through 2006, as well as [Salrecon's] unpaid federal employment and unemployment tax liabilities . . . incurred . . . between 2002 and 2007[.]" (Doc. 35 at 3). Plaintiff also asks the court to issue an order requiring the Taxpayer's personal representatives to provide an inventory of the deceased's estate.

The Urioste Defendants opposed the Motion on August 8, 2016 (Docs. 41, 42), and Plaintiff followed with its reply (Doc. 43) on August 22, 2016. For the reasons discussed below, the Motion is **GRANTED**.

_____

28 U.S.C. § 7403(a).

2

## II.     Summary Judgment Standard

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R . CIV. P. 56(a). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (instructing that "district court should resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his [or its] favor" (internal quotation marks omitted) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 2006) (en banc))). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d. 202 (1986). When, such as here, the moving party is the plaintiff, satisfying this initial Rule 56 burden means "*affirmatively* . . . support[ing] its motion with credible evidence …. [and] show[ing] that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *Fitzpatrick*, 2 F.3d at 1115 (citations and internal quotation marks omitted) (emphasis in original) (quoting *Four Parcels*, 941 F.2d at 1438). Only "[o]nce the moving party has properly supported its motion for summary judgment, [does] the burden shift[] to the nonmoving party to

'come forward with specific facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 1274 (11th Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)).

## III.   Factual Background[3]

Felix Urioste is the Taxpayer's father and a duly appointed personal representative of the Taxpayer's estate. AF No. 1.[4] Michael A. Urioste, Jr. is the Taxpayer's son and also a duly appointed personal representative of the Taxpayer's estate. AF No. 2. The Taxpayer's Last Will and Testament names Felix Urioste, Michael A. Urioste, Jr., and Mary D. Urioste as heirs to the deceased's estate. AF No.

---

[3] Keeping in mind that, when deciding a motion for summary judgment, the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

[4] Under Appendix II of the court's uniform initial order (Doc. 2) entered on October 14, 2015, "[a]ll statements of fact must be supported by specific reference to evidentiary submissions." (*Id.* at 16). The designation "AF" stands for admitted fact and indicates a fact offered by Plaintiff that it has adequately supported through citations to underlying evidence as Appendix II mandates. The Urioste Defendants "do not dispute any of the numbered statements of fact set forth by the Government in its summary judgment motion . . . ." (Doc. 41 at 4). The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of Plaintiff's factual background as set forth in Doc. 35. A number following a decimal point corresponds to the particular sentence within the numbered statement of facts. For example, (AF No. 2.2) would indicate the second sentence of paragraph 2 of Plaintiff's statement of undisputed facts is the subject of the court's citation to the record.

3.

Alabama Scrap is a limited liability company organized under the laws of Alabama. AF No 4. Alabama Scrap is a salvaging and recycling business located in Gadsden, Alabama. (Doc. 42 at 5).[5] Michael A. Urioste, Jr.–the Taxpayer's son–formed Alabama Scrap on April 25, 2006, and is its sole member. AF No. 5; (Doc. 42 at 5). Alabama Scrap's articles of organization were recorded in the public records of Etowah County, Alabama, on April 26, 2006. AF No. 6.

### Taxpayer's Individual Income Tax Assessments

For tax years 2002 through 2006, the Taxpayer filed Forms 1040–individual income tax returns–reporting the individual income taxes he owed (AF No. 7) but did not remit payment of the individual income tax liabilities reported on his federal income tax returns. AF No. 8. A delegate of the Secretary of the Treasury issued assessments against the Taxpayer on various dates for these delinquent individual tax payments, plus interest and applicable penalties.

| Tax | Assessment | Type of Assessment | Amount |
|---|---|---|---|
| 2002 | 8/7/2006 | Tax Owed Per Return | $86,164.00 |
| | | Penalty for Filing Return Late | $19,386.90 |
| | | Penalty for Failure to Pay Tax | $17,232.80 |
| | | Interest | $20,580.26 |
| | 5/14/2007 | Penalty for Failure to Pay Tax | $4,308.20 |
| | 10/27/2014 | Interest | $33,523.08 |
| 2003 | 9/4/2006 | Tax Owed Per Return | $104,370.00 |
| | | Estimated Tax Penalty | $2,692.88 |
| | | Penalty for Filing Return Late | $23,483.25 |

---

[5] All page references to Doc. 42 correspond with the court's CM/ECF numbering system.

|  |  | Penalty for Failure to Pay Tax | $15,133.65 |
|  |  | Interest | $19,540.76 |
|  | 5/14/2007 | Penalty for Failure to Pay Tax | $6,784.05 |
|  | 10/27/2014 | Interest | $49,925.67 |
| 2004 | 11/13/2006 | Tax Owed Per Return | $133,394.00 |
|  |  | Estimated Tax Penalty | $3,655.00 |
|  |  | Penalty for Filing Return Late | $30,013.65 |
|  |  | Penalty for Failure to Pay Tax | $12,672.43 |
|  |  | Interest | $18,958.82 |
|  | 5/14/2007 | Penalty for Failure to Pay Tax | $6,669.70 |
|  | 10/27/2014 | Interest | $59,455.72 |
| 2005 | 2/4/2008 | Tax Owed Per Return | $52,892.00 |
|  |  | Estimated Tax Penalty | $2,121.58 |
|  |  | Penalty for Filing Return Late | $11,900.70 |
|  |  | Penalty for Failure to Pay Tax | $5,818.12 |
|  |  | Interest | $9,343.16 |
|  | 10/24/2011 | Penalty for Failure to Pay Tax | $3,491.46 |
|  | 10/27/2014 | Interest | $12,820.75 |
| 2006 | 2/9/2009 | Tax Owed Per Return | $23,644.00 |
|  |  | Estimated Tax Penalty | $1,119.00 |
|  |  | Penalty for Filing Return Late | $5,319.90 |
|  |  | Penalty for Failure to Pay Tax | $1,655.08 |
|  |  | Interest | $3,772.15 |
|  | 10/24/2011 | Penalty for Failure to Pay Tax | $4,255.92 |
|  | 10/27/2014 | Interest | $8,118.84 |

AF No. 9.

A delegate of the Secretary of Treasury properly gave the Taxpayer notice of the unpaid tax described in AF No. 9 and demanded payment. AF No. 10. Despite notice and demand for payment, the individual income taxes, penalties, and interest assessed against the Taxpayer for tax years 2002 through 2006 remain unpaid. AF No. 11.

6

**Salrecon's Employment and Unemployment Tax Assessments**

Salrecon is a limited liability company organized under the laws of Delaware. AF No. 12. The Taxpayer was the sole member of Salrecon and elected to treat Salrecon as a sole proprietorship for tax purposes. AF No. 13. Salrecon filed Forms 941–quarterly federal employment tax returns–reporting employment taxes it incurred during the quarterly tax periods ending on September 30, 2002; March 31, 2003; June 30, 2003; September 30, 2003; December 31, 2003; June 30, 2004; September 30, 2004; December 31, 2004; March 31, 2005; June 30, 2005; September 30, 2005; December 31, 2005; March 31, 2006; June 30, 2006; December 31, 2006; March 31, 2007; March 31, 2008; June 30, 2008; and September 30, 2008. AF No. 14. Salrecon did not remit payment of the reported employment tax liabilities for any of the foregoing quarterly periods. AF No. 15.

On the dates and in the amounts described in the table below, a delegate of the Secretary of the Treasury assessed against Salrecon the employment taxes reported on its returns, plus interest and applicable penalties.

| Tax Period | Assessment Date | Type of Assessment | Amount |
|---|---|---|---|
| 9/30/2002 | 2/24/2003 | Tax Owed Per Return | $64,568.60 |
| | | Penalty for Filing Return Late | $2,905.59 |
| | | Federal Tax Deposit Penalty | $6,456.86 |
| | | Penalty for Failure to Pay Tax | $1,291.37 |

7

| | | Interest | $1,195.33 |
|---|---|---|---|
| | 3/31/2003 | Federal Tax Deposit Penalty | $3,228.43 |
| 3/31/2003 | 7/7/2003 | Tax Owed Per Return | $35,238.62 |
| | | Federal Tax Deposit Penalty | $2,095.21 |
| | | Penalty for Failure to Pay Tax | $15.00 |
| | | Interest | $9.36 |
| | 8/11/2003 | Federal Tax Deposit Penalty | $50.00 |
| 6/30/2003 | 10/20/2003 | Tax Owed Per Return | $34,689.90 |
| | | Penalty for Filing Return Late | $1,181.01 |
| | | Federal Tax Deposit Penalty | $2,694.86 |
| | | Penalty for Failure to Pay Tax | $393.67 |
| | | Interest | $290.80 |
| | 11/24/2003 | Federal Tax Deposit Penalty | $1,312.24 |
| 9/30/2003 | 11/05/2007 | Tax Owed Per Return | $53,290.67 |
| | | Penalty for Filing Return Late | $11,990.40 |
| | | Federal Tax Deposit Penalty | $5,329.07 |
| | | Penalty for Failure to Pay Tax | $13,056.21 |

| TAX PERIOD | ASSESSMENT DATE | TYPE OF ASSESSMENT | AMOUNT |
|---|---|---|---|
| | | Interest | $18,918.15 |
| | 12/10/2007 | Federal Tax Deposit Penalty | $2,664.53 |
| 12/31/2003 | 5/10/2004 | Tax Owed Per Return | $40,331.75 |
| | | Penalty for Filing Return Late | $1,814.93 |
| | | Federal Tax Deposit Penalty | $4,033.17 |
| | | Penalty for Failure to Pay Tax | $804.60 |
| | | Interest | $508.42 |
| | 6/14/2004 | Federal Tax Deposit Penalty | $2,009.82 |
| 6/30/2004 | 10/11/2004 | Tax Owed Per Return | $53,077.35 |
| | | Federal Tax Deposit Penalty | $1,806.54 |
| | | Penalty for Failure to Pay Tax | $225.15 |
| | | Interest | $123.11 |
| | 11/15/2004 | Federal Tax Deposit Penalty | $750.50 |
| 9/30/2004 | 2/28/2005 | Tax Owed Per Return | $47,232.31 |
| | | Federal Tax Deposit Penalty | $4,717.10 |
| | | Penalty for Failure to Pay Tax | $943.42 |
| | | Interest | $780.68 |
| | 4/4/2005 | Federal Tax Deposit Penalty | $2,358.56 |
| 12/31/2004 | 4/4/2005 | Tax Owed Per Return | $39,523.55 |
| | | Federal Tax Deposit Penalty | $3,952.34 |
| | | Penalty for Failure to Pay Tax | $592.85 |

8

| Tax Period | Assessment Date | Type of Assessment | Amount |
|---|---|---|---|
| | | Interest | $346.92 |
| | 5/9/2005 | Federal Tax Deposit Penalty | $1,976.18 |
| 3/31/2005 | 7/4/2005 | Tax Owed Per Return | $34,423.08 |
| | | Federal Tax Deposit Penalty | $3,442.30 |
| | | Penalty for Failure to Pay Tax | $516.35 |
| | | Interest | $369.75 |
| | 8/8/2005 | Federal Tax Deposit Penalty | $1,721.15 |
| 6/30/2005 | 6/4/2007 | Tax Owed Per Return | $34,738.28 |
| | | Penalty for Filing Return Late | $7,816.11 |
| | | Federal Tax Deposit Penalty | $3,473.81 |
| | | Penalty for Failure to Pay Tax | $3,693.84 |
| | | Interest | $5,833.76 |
| | 7/9/2007 | Federal Tax Deposit Penalty | $1,593.55 |
| 9/30/2005 | 12/26/2005 | Tax Owed Per Return | $42,881.39 |
| | | Federal Tax Deposit Penalty | $2,222.62 |
| | | Penalty for Failure to Pay Tax | $105.94 |
| | | Interest | $114.38 |
| | 1/30/2006 | Federal Tax Deposit Penalty | $529.68 |
| 12/31/2005 | 6/4/2007 | Tax Owed Per Return | $57,263.38 |
| | | Federal Tax Deposit Penalty | $1,168.90 |
| 3/31/2006 | 10/9/2006 | Tax Owed Per Return | $74,284.17 |

| Tax Period | Assessment Date | Type of Assessment | Amount |
|---|---|---|---|
| | | Penalty for Filing Return Late | $889.63 |
| | | Federal Tax Deposit Penalty | $1,235.88 |
| | | Penalty for Failure to Pay Tax | $148.27 |
| | | Interest | $200.68 |
| | 11/13/2006 | Federal Tax Deposit Penalty | $247.12 |
| 6/30/2006 | 10/2/2006 | Tax Owed Per Return | $60,856.18 |
| | | Federal Tax Deposit Penalty | $1,499.46 |
| | | Penalty for Failure to Pay Tax | $0.06 |
| | | Interest | $0.06 |
| 12/31/2006 | 4/2/2007 | Tax Owed Per Return | $46,260.26 |
| | | Federal Tax Deposit Penalty | $3,120.82 |
| | | Penalty for Failure to Pay Tax | $364.62 |
| | | Interest | $327.14 |
| | 5/7/2007 | Federal Tax Deposit Penalty | $1,215.39 |
| 3/31/2007 | 6/25/2007 | Tax Owed Per Return | $42,739.94 |
| | | Federal Tax Deposit Penalty | $1,343.19 |
| | | Penalty for Failure to Pay Tax | $64.97 |

| | | Interest | $80.22 |
|---|---|---|---|
| | 7/30/2007 | Federal Tax Deposit Penalty | $324.83 |
| 3/31/2008 | 6/9/2008 | Tax Owed Per Return | $47,820.51 |
| | | Federal Tax Deposit Penalty | $4,782.02 |
| | 7/6/2009 | Additional Tax Assessed | $2,217.84 |
| 6/30/2008 | 7/20/2009 | Tax Owed Per Return | $9,610.64 |
| | 11/02/2009 | Federal Tax Deposit Penalty | $872.99 |
| 9/30/2008 | 12/1/2008 | Tax Owed Per Return | $13,610.81 |
| | 7/6/2009 | Additional Tax Assessed | $5,174.96 |
| | | Federal Tax Deposit Penalty | $517.49 |
| | 8/17/2009 | Federal Tax Deposit Penalty | $ 258.75 |

AF No. 16.

For tax years 2005 through 2007, Salrecon filed Forms 940–annual federal unemployment tax returns—reporting the unemployment taxes it incurred during these years. AF No. 17. For tax years 2005 through 2007, Salrecon did not remit payment of the unemployment tax liabilities reported on its unemployment tax returns. AF No. 18.

On the dates and in the amounts described in the table below, a delegate of the Secretary of the Treasury assessed against Salrecon the unemployment taxes reported on its returns, plus interest and applicable penalties.

| TAX PERIOD | ASSESSMENT DATE | TYPE OF ASSESSMENT | AMOUNT |
|---|---|---|---|
| 12/31/2005 | 7/17/2006 | Tax Owed Per Return | $2,313.88 |
| | | Penalty for Failure to Pay Tax | $11.38 |
| | | Interest | $12.53 |
| 12/31/2006 | 4/23/2007 | Tax Owed Per Return | $2,110.30 |
| | | Penalty for Failure to Pay Tax | $31.65 |
| | | Interest | $38.27 |
| 12/31/2007 | 9/29/2008 | Tax Owed Per Return | $2,693.55 |
| | | Penalty for Late Filing | $295.93 |
| | | Penalty for Failure to Pay Tax | $6.04 |
| | | Interest | $59.52 |

AF No. 19.  A delegate of the Secretary of Treasury properly gave the Taxpayer notice of the unpaid tax described in AF Nos. 16 and 19 and demanded payment. AF No. 20. Despite notice and demand for payment, the employment and unemployment taxes, penalties, and interest assessed against Salrecon, for which the Taxpayer is liable as its sole member, remain unpaid. AF No. 21.

### **Taxpayer's Installment Agreement and Bankruptcy Petition**

To pay the taxes assessed against him, the Taxpayer requested an installment payment agreement from the Internal Revenue Service (the "IRS"). AF No. 22.1. The agreement was pending between November 8, 2006, and November 2, 2007. AF No. 22.2. Having failed to pay his tax debts under the installment agreement, the Taxpayer filed a petition for relief under Chapter 11 of the Bankruptcy Code on May 29, 2008 (Case No. 08-41076-JJR (Bankr. N.D. Ala.) (Robinson, J.)). AF No. 23.

The Taxpayer received a general discharge under Section 727 of the Bankruptcy Code on August 5, 2009. AF No. 24. The Taxpayer's individual income tax returns for tax years 2002 through 2006 were either due within three years of the petition date, or filed late within two years of that date. AF No. 25. The penalties assessed against the Taxpayer for tax years 2005 and 2006 and reflected in AF No. 9 relate to his failure to timely file his returns and pay the tax he owed and accrued within three years of the petition date. AF No. 26.

The Taxpayer's individual income tax liabilities for tax years 2002 through 2006, and the penalties assessed against him for tax years 2005 and 2006, were excepted from his 11 U.S.C. § 727(a) discharge. AF No. 27. The IRS abated the penalties assessed against the Taxpayer for tax years 2002 through 2004. AF No. 28.

The Taxpayer's personal liability for the trust-fund component of the employment taxes incurred by Salrecon for the tax periods summarized in AF No. 16, were excepted from discharge by 11 U.S.C. § 523(a)(1)(A) as a tax required to be withheld for which the Taxpayer was personally liable as Salrecon's sole member. AF No. 29. Salrecon's federal employment tax returns (Forms 941) for the tax periods ending June 30, 2005, and December 31, 2005, through September 30, 2008, reflected in AF No. 16 and Salrecon's federal unemployment tax returns (Forms 940) for tax years 2005 through 2006, reflected in AF No. 19 were all due to be filed within three years of May 29, 2008–the date of the Taxpayer's bankruptcy petition. AF No. 30.

The Taxpayer's personal liability for the non-trust-fund component of the employment taxes incurred by Salrecon for the tax periods ending June 30, 2005 and December 31, 2005 through September 30, 2008, reflected in AF No. 16, as well as his liability for the unemployment taxes the LLC incurred for tax years 2005 through 2006, were excepted from discharge by 11 U.S.C. § 523(a)(1)(A). AF No. 31. The Taxpayer's employment tax liabilities for taxable periods ending September 30, 2003;

12

March 31, 2008; June 30, 2008; and September 30, 2008, as well as his unemployment tax liability for tax year 2007, were also excepted from discharge by 11 U.S.C. § 523(a)(1)(B)(i) because the Forms 941/940 for those periods were not filed when due and were filed after two years before the Taxpayer filed for bankruptcy. AF No. 32.

The IRS abated all of the penalties assessed against the Taxpayer for conduct that occurred more than three years before he filed for bankruptcy. AF No. 33.1. Similarly, the IRS abated the unpaid non-trust fund portion of the employment taxes assessed against Salrecon (but for which the Taxpayer was personally liable) for taxable periods where Forms 941 were due more than three years before the filing of the Taxpayer's bankruptcy petition. AF No. 33.2.

<u>**Adjusted Assessments Currently Claimed by Plaintiff**</u>

As of July 12, 2016, the deceased Taxpayer owes the United States a total of $576,132.40 on the income tax assessments described in AF No. 9, $528,242.19 on the employment tax assessments described in AF No. 16, and $6,716.13 on the unemployment tax assessments described in AF No. 19. AF No. 34.

<u>**Notices of Federal Tax Liens**</u>

A delegate of the Secretary of Treasury has properly recorded (and, in some instances, re-recorded) Notices of Federal Tax Liens against the Taxpayer and

Salrecon for 940, 941, and 1040 tax liability in the public records of Etowah County,

Alabama, pursuant to 26 U.S.C. § 6323(f) and Ala. Code § 35-4-51. AF No. 35.

## Rainbow Drive Parcel

The Taxpayer acquired title to the real property located at 958 Rainbow Drive

in Gadsden, Alabama (the "Rainbow Drive Parcel") on September 5, 2003, by

quitclaim deed recorded in the public records of Etowah County on May 28, 2004,

as Document Number D-2004-2246. AF No. 36.1. A corrected quitclaim deed was

recorded on January 4, 2012, as Instrument Number 3360407. AF No. 36.2.

Metro Bank holds a first mortgage on the Rainbow Drive Parcel. AF No. 37.1.

This mortgage was recorded on March 16, 2006, as Instrument Number 3242904 in

the public records of Etowah County. AF No. 37.2.

Teja Jouhal holds a second mortgage on the Rainbow Drive Parcel, which was

recorded on April 18, 2007, as Instrument Number 3269163 in the public records of

Etowah County. AF No. 38.1. By its terms, this second mortgage is subordinate to the

first mortgage held by Metro Bank and the Notices of Federal Tax Lien originally

recorded as Instrument Numbers 3247131 and 3259924 in the public records of

Etowah County. AF No. 38.2.

## River Road Parcel

The Taxpayer acquired title to the real property located at 126 River Road in

14

Gadsden, Alabama (the "River Road Parcel") on December 6, 2005, by warranty deed recorded as Document Number D-2005-5797 in the public records of Etowah County, subject to a development agreement with the City of Gadsden dated November 22, 2005. AF No. 39. The City of Gadsden disclaims any legal or equitable interest in any property that is the subject of this action, including the River Road Parcel. AF No. 40.

Teja Jouhal holds a first mortgage on the River Road Parcel, which was recorded on April 18, 2007, as Instrument Number 3269163 in the public records of Etowah County. AF No. 41.1. By its terms, this mortgage is subordinate to the Notices of Federal Tax Lien originally recorded as Instrument Numbers 3247131 and 3259924 in the public records of Etowah County. AF No. 41.2. Metro Bank holds a non-exclusive right of ingress and egress over any driveways or roads as they presently exist or as they may be altered in the future over the River Road Parcel. AF No. 42.

## Forrest Avenue Parcels

The Taxpayer acquired title to the real property located at 1733 Forrest Avenue in Gadsden, Alabama (the "Forrest Avenue Parcels") by warranty deed recorded on April 21, 2006, as Instrument Number 3245269 in the public records of Etowah County. AF No. 43. The Taxpayer granted a first mortgage on the Forrest Avenue Parcels to Metro Bank. AF No. 44.1. This mortgage was recorded on April 21, 2006,

15

as Instrument Number 3245270 in the public records of Etowah County. AF No 44.2. At the time of the acquisition of the Forrest Avenue Parcels by the Taxpayer, it was in the contemplation of the parties that the Forrest Avenue Parcels would later be conveyed by the Taxpayer to another entity that would assume and pay the Metro Bank mortgage, and Metro Bank consented to the anticipated conveyance. AAF No. 11.[6]

The Taxpayer conveyed the Forrest Avenue Parcels to Alabama Scrap by warranty deed recorded on November 13, 2006, as Instrument Number 3269094. AF No. 45. The warranty deed conveying title from the Taxpayer to Alabama Scrap was made subject to several exceptions, including: "[t]hat Internal Revenue Services [sic] tax lien in the amount of $264,720.26 recorded in Instrument # 3247131, Page 1 UCC, Probate Office, Etowah County, Alabama." AF No. 46. The Taxpayer caused the deed conveying the Forrest Avenue Parcels to Alabama Scrap to be prepared, executed and recorded. AAF No. 12.

---

[6]   "AAF" stands for additional admitted fact indicates a fact offered by the Urioste Defendants that they have adequately supported through citations to underlying evidence as Appendix II mandates. For the purposes of summary judgment, Plaintiff does not contest any of the additional disputed and undisputed facts offered by the Urioste Defendants. (Doc. 43 at 2). The court's numbering of additional admitted facts (e.g., AAF No. 1) corresponds to the numbering of the Urioste Defendants' additional undisputed facts section as set forth in Doc. 41 at 4-6. Concerning the Urioste Defendants' additional disputed facts section (Doc. 41 at 6-8 ¶¶ 1-5), the court has renumbered these paragraphs as AAF No. 11 through AAF No. 15, to avoid duplicative numerical factual references.

As consideration for the conveyance of the Forrest Avenue Parcels by the Taxpayer, Alabama Scrap assumed and agreed to pay the purchase money mortgage indebtedness in the approximate amount of $60,000.00 owed to Metro Bank that encumbered the Forrest Avenue Parcels. AAF No. 1. The intention of Alabama Scrap in acquiring the Forrest Avenue Parcels was to have property from which to operate the business of Alabama Scrap. AAF No. 7.

The Metro Bank mortgage against the Forrest Avenue Parcels had priority over all of the tax liens filed by Plaintiff against the Taxpayer. AAF No. 6. Alabama Scrap eventually paid the outstanding mortgage owed to Metro Bank on the Forrest Avenue Parcels. AAF No. 4. Metro Bank recorded a satisfaction of its mortgage lien on the Forrest Avenue Parcels on May 19, 2011, as Instrument Number 3349912 in the public records of Etowah County. AF No. 47. When Alabama Scrap paid the Metro Bank purchase money mortgage against the Forrest Avenue Parcels, Alabama Scrap intended and expected to acquire the same priority of the Metro Bank mortgage in the Forrest Avenue Parcels, to-wit: good and marketable title free and clear of any junior liens or encumbrances. AAF No. 13.

After acquiring the Forrest Avenue Parcels, Alabama Scrap made various improvements to the property including the construction and/or installation of truck scales; concrete approaches to the scales; fabrication of a scale house; installation of

17

company signs; spreading crushed rock for a suitable surface for the scrap yard; and the installation of step railing. AAF No. 2.1. Alabama Scrap values these improvements at $140,900.00. AF No. 2.2.

Except for the tax lien recorded by Plaintiff on May 22, 2006 (Instrument No. 3247131), all other tax liens asserted by Plaintiff in this case were recorded after the November 13, 2006 recording of the deed of the Forrest Avenue Parcels from the Taxpayer to Alabama Scrap and are not encumbrances on the Forrest Avenue Parcels. AF No. 3. The tax lien recorded on May 22, 2006, corresponds with claims for 941 taxes for the following periods:  3rd Quarter 2002; 1st Quarter 2003; 2nd Quarter 2003; 4th Quarter 2003; 2nd Quarter 2004; 3rd Quarter 2004; 4th Quarter 2004; 1st Quarter 2005; and 3rd Quarter 2005. AAF No. 5.

From the time Alabama Scrap assumed the Metro Bank mortgage, until the filing of this civil action, neither Alabama Scrap, nor its members, had any actual knowledge of the intervening federal tax lien. AAF No. 14. No person connected with Alabama Scrap saw the deed of conveyance for the Forrest Avenue Parcels or were aware of the details of its contents until after this civil action was commenced and a copy of the deed was reviewed. AAF No. 15.

## IV.    Analysis

The Urioste Defendants' opposition in no way challenges the merits of

Plaintiff's *prima facie* case to enforce its tax liens. (*Cf.* Doc. 41 at 8 ("The Urioste

Defendants do not contest the tax liability of the deceased Taxpayer as set forth in

[Plaintiff's Motion].")). They also do not challenge Plaintiff's right to foreclose upon

the Rainbow Drive and River Road Parcels. (Doc. 41 at 8).

Instead, the scope of the Urioste Defendants' opposition is limited to Plaintiff's

tax lien interest in the Forrest Avenue Parcels. *Id.* More specifically, the Urioste

Defendants raise three equitable defenses to Plaintiff's enforcement efforts

concerning the Forrest Avenue Parcels:  (i) equitable subrogation; (ii) unjust

enrichment; and (iii) marshaling of assets. None of these is sufficient to prevent the

entry of summary judgment in favor of Plaintiff's right to foreclose upon the Forrest

Avenue Parcels.

## A.      Preliminary Considerations

Both sides have directed this court to evaluate the substance of the Urioste

Defendants' equitable theories primarily in reference to Alabama law. Absent any

disagreement, the court accepts the parties' proposed framework for the purposes of

deciding Plaintiff's Motion. *See United States v. Bess*, 357 U.S. 51, 55, 78 S. Ct.

1054, 1057, 2 L. Ed. 2d 1135 (1958) (recognizing that federal tax code "creates no

property rights but merely attaches consequences, federally defined, to rights created

under state law"), *superseded by statute on other grounds as stated in United States*

*v. Metro. Life Ins.*, 874 F.2d 1497, 1499-1500 (11th Cir. 1989); *United States v. Craft*, 535 U.S. 274, 278, 122 S. Ct. 1414, 1420, 152 L. Ed. 2d 437 (2002) (same); *see also Morgan v. Comm'r of Internal Revenue*, 309 U.S. 78, 80, 60 S. Ct. 424, 426, 84 L. Ed. 585 (1940) ("State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed.").

### B.    Equitable Subrogation

As the Supreme Court of Alabama has explained the doctrine of equitable subrogation:

> (1) The loan or advancement must have been made and used to pay off the debt secured by the prior lien and it is the lender's duty to see that the money is so applied, for the right of subrogation does not arise when the money advanced is to be applied at the discretion of the debtor; (2) the parties must contemplate that the lender will have security of equal dignity with the lien discharged by the payment; (3) the whole debt must be paid before subrogation can be enforced, that is, pro tanto subrogation is not recognized; (4) the lender at the time of the loan must be ignorant of the intervening lien or encumbrance and such ignorance must not be the consequence of culpable negligence; (5) the intervening lienor must not be burdened or embarrassed.

*Federal Land Bank of New Orleans v. Henderson, Black & Merrill Co.*, 253 Ala. 54, 59, 42 So.2d 829, 833 (1949) (citing *Groom v. Fed. Land Bank of New Orleans*, 240 Ala. 335, 337, 199 So. 237, 239 (1940)); *see also Tilley's Alabama Equity* § 23:5 at 443 (5th ed. 2012) ("The doctrine of equitable subrogation arises usually in situations where a creditor advances money to pay off one mortgage or encumbrance without

notice of another encumbrance, whether a lien or mortgage, or without notice of defect in title, which otherwise would have priority over the creditor's mortgage.").

The Urioste Defendants assert that Alabama Scrap should be entitled to equitable subrogation because that entity assumed the obligation of the Taxpayer and paid off the superior lien–the Metro Bank mortgage–encumbering the Forrest Avenue Parcels. (Doc. 41 at 11). Further, the Urioste Defendants emphasize that Alabama Scrap (and its sole member–Michael A. Urioste, Jr.) had no prior notice of the federal tax lien when it was paying off the Metro Bank mortgage. (Doc. 41 at 13).

What is substantively missing from their equitable contention is any evidence that Alabama Scrap ever expressly or implicitly acted as a lender to the Taxpayer–Alabama Scrap did not advance funds to the Taxpayer to pay off the Metro Bank loan. To the contrary and by virtue of the Taxpayer's conveyance of the Forrest Avenue Parcels to it, Alabama Scrap received the benefit of using the land, stood in the shoes of the Taxpayer who originally took out the purchase-money mortgage to pay for the property, and paid the debt owed to Metro Bank over a period of time. Thus, the first element of equitable subrogation is missing.[7]

The second element is also lacking. Although Alabama Scrap contends that it

---

[7] The parties disagree over whether culpable negligence–the fourth element–exists on this record. Because the court finds equitable subrogation to be lacking in other aspects, it does not reach this particular disputed issue.

intended and expected to acquire the same priority of the Metro Bank mortgage in the Forrest Avenue Parcels, no comparable understanding by the Taxpayer or Metro Bank is reflected in the record. Instead, when the Taxpayer recorded the warranty deed conveying the Forrest Avenue Parcels to Alabama Scrap, he specifically acknowledged the attached federal tax lien.

The court further finds equitable subrogation to be inappropriate in the absence of any authority cited by the Urioste Defendants in which a court applied the doctrine in a situation similar to this one–to benefit a conveyee who incrementally satisfied a preexisting mortgage to the detriment of the United States in its enforcement of a federal tax lien that had attached to that property before the conveyance took place. The court, therefore, rejects equitable subrogation as a defense to Plaintiff's Motion.

### C.    Unjust Enrichment

The Urioste Defendants also maintain "[u]nder the circumstances of this case it would be inequitable and unjust to allow the Government to reap the benefit of the expenditures of Alabama Scrap when Alabama Scrap has no liability for the tax debt of the Taxpayer." (Doc. 41 at 16). Consequently, they urge the court to apply unjust enrichment in the form of an equitable lien in favor of Alabama Scrap "equal to the value of the expenditures and improvements made to or for the benefit of the Forrest Avenue [Parcels]." *Id.*

22

One of the cases cited by the Urioste Defendants is the class certification decision of *Wyeth, Inc. v. Blue Cross & Blue Shield of Alabama*, 42 So. 3d 1216 (Ala. 2010). In *Wyeth*, the Supreme Court of Alabama discussed the debate over whether Alabama law required "proof of mistake on the part of the plaintiff or of wrongful conduct by a defendant" to establish unjust enrichment, 42 So. 3d at 1224, or whether the jurisdiction recognized the less demanding "'equity and good conscience' type of unjust-enrichment claim[.]" 42 So. 3d at 1225. While the *Wyeth* court suggested that "the better argument as to the requirements of Alabama law regarding unjust enrichment" favored following the more stringent former framework, ultimately it did "not definitively address this question . . . . [because the case involved] certification of a *nationwide* class. . . . [and] [t]here ha[d] been no adequate showing . . . that the laws of all (or even most of) the 49 other states would allow unjust-enrichment claims to proceed [as equity and good conscience ones] . . . ." 42 So. 3d at 1225 (emphasis in original).

Since the *Wyeth* decision, the Alabama Court of Civil Appeals has quoted the opinion and required a plaintiff to show some type of "mistake or fraud" (versus merely meeting an equity-and-good conscience test) to maintain this equitable theory. *See Kruse v. City of Birmingham*, 67 So. 3d 910, 915 (Ala. Civ. App. 2011) ("Kruse does not explain how his payment of the allegedly time-barred fines was made

pursuant to a mistake or fraud so as to make the City's collection and retention of his payment unjust."); *see also Willow Lake Residential Ass'n, Inc. v. Juliano*, 80 So. 3d 226, 244 (Ala. Civ. App. 2010) (mentioning *Wyeth* and defining unjust enrichment to include either "mistake or misreliance by the donor or wrongful conduct by the recipient" as quoted in *Mantiply v. Mantiply*, 951 So.2d 638, 654–55 (Ala. 2006)); *Givianpour v. Citizens Trust Bank*, No. 2:12-CV-00325-SLB, 2013 WL 839922, at *4 (N.D. Ala. Mar. 6, 2013) (quoting *Wyeth* and concluding that "[t]o prevail on an unjust enrichment claim, the plaintiff must establish 'mistake or misreliance by the donor or wrongful conduct by the recipient'"); *cf. Gunter v. Chase Bank USA, N.A.*, 731 F. Supp. 2d 1238, 1248-49 (S.D. Ala. 2010) (quoting *Wyeth* and concluding that "Alabama courts require unconscionable conduct on the part of the defendant in order to make a claim for unjust enrichment").

In light of the foregoing cases, this court is persuaded that under Alabama law a party, like Alabama Scrap, attempting to invoke unjust enrichment as a defense to a lien foreclosure has the option of showing either a mistake or misreliance on its part or, alternatively, wrongful conduct by the lienholder. Turning to the second option first, the court easily concludes that the Urioste Defendants have no evidence showing that Plaintiff engaged in any wrongful conduct. Therefore, the Urioste Defendants are left only with the possibility of meeting the mistake/misreliance prong

of Alabama's unjust enrichment test.

Ultimately, the court finds that the Urioste Defendants' efforts to support this alternative avenue are also deficient. Importantly, the Urioste Defendants have not explained how Alabama Scrap's paying off the Metro Bank mortgage or making improvements to the land was premised upon the type of mistake or misreliance that would support unjust enrichment in favor of Alabama Scrap–the Metro Bank debt was undisputedly owed and Alabama Scrap knew it had to be paid off for it to continue to occupy and use the Forrest Avenue Parcels. Further, the improvements were necessary for Alabama Scrap to run its business on the Forrest Avenue Parcels which it was able to do for approximately ten years. In that sense, the expenditures made by Alabama Scrap to extinguish the Metro Bank debt and improve the Forrest Avenue Parcels were not "mistaken," but rather necessary for Alabama Scrap to operate for the benefit of Michael A. Urioste, Jr., Alabama Scrap's sole member, and another unidentified person who was involved in Alabama Scrap's salvage and recycling business via a contractual arrangement. (Doc. 42 at 5).

The Urioste Defendants' position seems to be that, had they known about the preexisting federal tax lien on the Forrest Avenue Parcels (that they claim the Taxpayer failed to tell them about), then Alabama Scrap never would have "mistakenly" accepted the conveyance of the Forrest Avenue Parcels from the

Taxpayer in the first place. However, noticeably absent from this contention is any authority cited by the Urioste Defendants demonstrating that a defendant's acceptance of a conveyance from a third party with an undisclosed but recorded federal tax lien is an acceptable instance for invoking an unjust enrichment defense to that plaintiff's right to enforce the otherwise valid lien.

Moreover, the court is persuaded that applying unjust enrichment to impose the requested equitable lien in Alabama Scrap's favor to the detriment of Plaintiff's interest because of the Taxpayer's omission would be inequitable under Alabama law, given the lack of any contributing conduct on the part of Plaintiff. *Cf., e.g., Costanza v. Costanza*, 346 So. 2d 1133, 1136 (Ala. 1977) ("Our cases make clear that, whether the equitable grounds essential to give the 'equitable lien' principle a field of operation are expressed in terms of 'fraud', 'unclean hands', or 'unjust enrichment' mere passive conduct on the part of the party against whose interest the lien [is] sought is not sufficient.") (emphasis added); *id.* ("Our careful review of the record fails to disclose any conduct on the part of Mrs. Costanza which even approaches any culpability of the nature required to invoke the operative effect of the equitable lien doctrine."). Akin to *Costanza*, because Plaintiff's conduct in this instance is, at best, merely passive, the imposition of a lien in Alabama Scrap's favor premised upon any equitable theory would be inappropriate. Thus, the court rejects the Urioste

26

Defendants' unjust enrichment defense to Plaintiff's Motion.

### D.    Marshaling of Assets

Lastly, the Urioste Defendants maintain that this court should impose the equitable concept of marshaling assets upon Plaintiff and require it to execute and liquidate the liens on Rainbow Drive and River Road Parcels before being allowed to foreclose upon the Forrest Avenue Parcels to satisfy any remaining tax lien deficiency. (Doc. 41 at 19-20). "The equitable doctrine of marshaling rests upon the principle that a creditor having two funds to satisfy his debt may not, by his application of them to his demand, <u>defeat another creditor</u>, who may resort to only one of the funds." *Sowell v. Fed. Reserve Bank of Dallas, Tex*., 268 U.S. 449, 456-57, 45 S. Ct. 528, 530, 69 L. Ed. 1041 (1925) (emphasis added). Consistent with *Sowell*'s framework for marshaling of assets, Plaintiff counters that Alabama Scrap, as a non-creditor, lacks standing to rely upon this doctrine.

As the Supreme Court of Alabama has explained the contours of this equitable doctrine:

> Nor to aid in redemption has the purchaser the right to require that the mortgagee shall exhaust other securities for the payment of the mortgage debt.--*Ste[v]ens v. Church*, 41 Conn. 369. <u>The principle prevailing in the marshaling of assets, or between creditors with liens or incumbrances</u>, that when one has a lien on two different parcels of land, or on two funds, and another has a junior lien on one only of the parcels, or on one only of the funds, the prior creditor or incumbrancer will be

27

compelled to exhaust that fund first, to which the junior cannot resort, <u>cannot be invoked by the purchaser. He stands in the place of the mortgagor, having no other or greater rights, and is *subject to his disabilities*</u>. A debtor, bound absolutely to the payment of his debt, (unless his homestead rights are involved, and as to these we express no opinion,) can have no equity to compel the election of his creditor, as to which of two funds equally liable, shall be applied in payment of the debt. *Rogers v. Meyer*, 68 Ill. 92. Payment of the debt, his legal and moral duty will relieve each fund. The rights of the purchaser of the equity of redemption are no other or greater than the rights of the mortgagor.

*Lovelace v. Webb*, 62 Ala. 271, 279 (1878) (emphasis by underling added).

In light of the foregoing language from *Sowell* and *Lovelace*, the court agrees with Plaintiff that the marshaling of assets theory suffers from the same type of flaw already examined in the Urioste Defendants' ineffective reliance upon the doctrine of equitable subrogation–Alabama Scrap has not established its status as a creditor of the Taxpayer. Instead, Alabama Scrap is simply a conveyee of the Taxpayer. Consequently, Alabama Scrap is a purchaser and stands in the shoes of the Taxpayer. Consistent with *Lovelace*, Alabama Scrap has no standing to invoke marshaling of assets to prevent Plaintiff's foreclosure upon the Forrest Avenue Parcels. *Cf. also Sowell*, 268 U.S. at 457, 45 S. Ct. at 530 ("The debtor may not ordinarily invoke the doctrine, for by doing so he would disregard the express provisions of his contract on which the creditor is entitled to rely.").

Therefore, the court concludes that Alabama law prohibits a non-creditor such

as Alabama Scrap from relying upon a marshaling of assets theory to prevent Plaintiff's enforcement of its tax lien. Bolstering this conclusion is the absence of any authority cited by the Urioste Defendants demonstrating that the doctrine is <u>ever</u> rightfully invoked by a non-creditor or a non-lienholder.

Additionally, and assuming that Alabama Scrap's paying off the Metro Bank loan somehow transforms Alabama Scrap into an equitable creditor of the Taxpayer, as Plaintiff points out, several courts have been unwilling to require the United States to marshal assets for the benefit of junior lienholders when it is seeking to enforce a federal tax lien. *See, e.g., United States v. Cohen*, 271 F. Supp. 709, 718 (S.D. Fla. 1967) ("The Court's usual equity powers are said to be limited by the special statutory provisions of § 6325 regarding discharge of tax liens, which provisions make no mention of discharge by marshaling other assets of the taxpayer."); *Cohen*, 271 F. Supp. at 718 ("This Court finds the line of cases refusing to apply the doctrine of marshaling assets to be more convincing. This is especially so in view of the equities appearing in the instant case."); *United States v. Herman*, 310 F.2d 846, 848 (2d Cir. 1962) ("Nor will we subject the government to a requirement that it marshal assets in favor of junior lienors, as this would create an extreme burden on collection of the revenue, unauthorized by statute."); *United States v. Valley Nat'l Bank (In re Decker)*, 199 B.R. 684, 688 (9th Cir. BAP 1996) ("The Ninth Circuit Court of Appeals has

expressly rejected the application of the doctrine of marshaling to the enforcement of federal tax liens." (citing *Silverstein v. United States (In re Ackerman)*, 424 F.2d 1148, 1150 (9th Cir. 1970))).

Without adopting a *per se* rule that would prohibit a marshaling of assets defense in any federal tax lien enforcement action, *see Ramette v. United States (In re Bame)*, 279 B.R. 833, 838 (B.A.P. 8th Cir. 2002) ("[W]e decline to hold that the application of marshaling to governmental taxing authorities is *per se* prohibited[; r]ather . . . marshaling must be evaluated on a case by case basis, regardless of whether a taxing authority is involved."), the court concludes that the equities in this lawsuit do not favor the doctrine's application for the benefit of Alabama Scrap. In particular, the Urioste Defendants have made no showing that the Taxpayer's liability owed to Plaintiff would likely be extinguished by Plaintiff's execution on the Rainbow Drive and River Road Parcels only. The court, therefore, rejects marshaling of assets as a bar to Plaintiff's Motion.

### E.   Plaintiff's Right To Receive an Inventory of the Taxpayer's Estate

In the last section of its Motion, Plaintiff seeks summary judgment on Count IV of its complaint, which "asks the Court to order an inventory of the property in the estate" pursuant to 26 U.S.C. § 7402. (Doc. 35 at 27); *see also* 26 U.S.C. § 7402(a)

("The district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction . . . and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws."). An order requiring an inventory of the Taxpayer's estate plainly falls within the jurisdictional powers bestowed upon district courts under § 7402(a). Further, the Urioste Defendants have offered no opposition to this particular portion of Plaintiff's Motion. *Cf., e.g., Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment). Accordingly, the remainder of Plaintiff's Motion is also **GRANTED**.

## V.    Conclusion

Thus, Plaintiff's Motion is **GRANTED** from the standpoint of the tax lien enforcement relief that it seeks against the Urioste Defendants. With no other disputed claims pending, Plaintiff is **ORDERED** to file a proposed order of final judgment that incorporates the rulings contained in this memorandum opinion as well as the priority of interests set forth in the orders (Docs. 31, 37) previously entered in this action, no later than 5:00 p.m. on February 13, 2017. Plaintiff also shall submit

a copy[8] to the court via chambers email: hopkins_chambers@alnd.uscourts.gov. Any objections by any party to Plaintiff's proposed final judgment order are due 7 days after it has been filed into the record. At the end of such 7-day period, the proposed final judgment order will be under submission and final judgment in favor of Plaintiff will be entered shortly thereafter.

   **DONE** and **ORDERED** this 12th day of January, 2017.

_____

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[8] Preferably in WordPerfect format.